**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| v. | |
| **TIMOTHY ROWBOTTOM**, | Case No. 24-cr-211 (TNM) |
| Defendant. | |

## MEMORANDUM ORDER

The Government brought several misdemeanor charges against Timothy Rowbottom, claiming he participated in the attack on the U.S. Capitol. To expedite its disclosure of potentially discoverable materials, the Government now seeks a protective order limiting the use, dissemination, and reproduction of sensitive information. Rowbottom opposes the order, saying the Government failed to show good cause. But the Court finds that the Government has shown good cause, so it will grant the Government's motion and issue its proposed protective order.

## I.

The Government charged Rowbottom with four misdemeanors as a result of his alleged conduct at the U.S. Capitol on January 6, 2021. *See* Information at 1–3,[1] ECF No. 12. During its investigation of the attack, the Government obtained and continues to obtain "voluminous amounts of information and evidence relating to both charged and uncharged individuals." Gov't Mot. for Protective Order ("Gov't Mot.") ¶ 3, ECF No. 14. More than 8.14 million files relating to the Capitol attack are available to January 6 defendants. *Id.* ¶ 11.

Given the volume and nature of these materials, the Government believes they contain sensitive information. *Id.* ¶ 4. For instance, the Government anticipates its productions may

---

[1] The Court's page citations refer to the pagination automatically generated by CM/ECF.

contain "personal identity information," information on "confidential sources," medical records, law-enforcement methods, "security information," and "tax information." Gov't Proposed Protective Order Governing Discovery ("Protective Order") at 1–2, ECF No. 14-1.

If any such information appears in its productions, the protective order would allow the Government to mark those materials as "Sensitive" or "Highly Sensitive." *Id.* at 2. These designations would, in turn, limit how Rowbottom and his legal team could use, disseminate, or reproduce the information. *See id.* at 2–4. The Government says this system gives it the "ability to provide voluminous discoverable materials expeditiously, while adequately protecting the United States' legitimate interests." Gov't Mot. ¶ 9.

Rowbottom disagrees. He claims the protective order is unjustified because the Government failed to support its request with good cause. *See* Def.'s Opp'n at 2–5, ECF No. 18. The Government's motion is ripe.

## II.

Under Federal Rule of Criminal Procedure 16, the Government is required "to produce, upon the defendant's request, any documents and data that are material to preparing the defense." *United States v. Dixon*, 355 F. Supp. 3d 1, 3 (D.D.C. 2019) (citing Fed. R. Crim. P. 16(a)(1)(A)–(G)). Under this rule, "the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d). In other words, the Court may issue a protective order upon a showing of good cause. *See id.*

Three factors bear on the presence of good cause: "whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm." *Dixon*, 355 F. Supp. 3d at 4. "[O]nce a showing of good cause has been made, the court has relatively

unconstrained discretion to fashion an appropriate protective order." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018); *see also Alderman v. United States*, 394 U.S. 165, 185 (1969) ("[T]he trial court can and should" issue protective orders "where appropriate.").

Because the Government is the party seeking a protective order, it bears the burden of justifying its request with good cause. *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015). Its justification must be "particularized" and "specific," bearing in mind that "the level of particularity required depends on the nature and type of protective order at issue." *Dixon*, 355 F. Supp. 3d at 4 (cleaned up).

### III.

The Government has amply justified its request for a protective order.

*First*, the unfettered "disclosure of the materials in question would pose a hazard to others." *Dixon*, 355 F. Supp. 3d at 4. The discovery materials in this case are vast; Rowbottom would have access to over 8.14 million documents and 32,000 videos. Gov't Mot. ¶ 11. And some of these materials include sensitive "information such as tips, witness statements, and the results of searches performed upon *other individuals*' devices and accounts." Gov't Reply ¶ 4 (emphasis added), ECF No. 19. Disclosing this information without any protective measures could jeopardize potential witnesses, publicize personally identifiable information, and divulge details about security at the U.S. Capitol. *Accord United States v. McCaughey*, 534 F. Supp. 3d 132, 138–40 (D.D.C. 2021) (finding "hazard to others" absent protective order nearly identical to the one proposed here).

Rowbottom does not quarrel with this conclusion. Instead, he faults the protective order for being overbroad and for failing to "identify materials specific to this case." Def.'s Opp'n at 4. True, the Government's proposed order paints with a broad brush. But it is fashioned to

facilitate the efficient flow of discovery for one the largest prosecutions "in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence." Gov't Reply ¶ 6.

Given this context, the proposed order is sufficiently "particularized" and "specific." *Dixon*, 355 F. Supp. 3d at 4; *McCaughey*, 534 F. Supp. 3d at 138 ("The nature of the showing of particularity . . . depends upon the nature or type of protective order at issue." (cleaned up)). It only applies to ten specific categories of protected information, none of which draw any objection from Rowbottom. *See* Protective Order at 1. The Government has promised to designate materials sparingly and only where necessary. *See id.* at 2 ("The Government agrees to make every effort to provide discovery in a manner that will allow for *most discovery* to be produced *without* such designations." (emphasis added)). And if disputes arise, the Government "will agree to redaction" as an alternative when it will "resolve the basis for which a sensitivity designation was applied." *Id.* at 4. The Government's proposed order "is therefore not impermissibly broad or unspecific." *McCaughey*, 534 F. Supp. 3d at 139.

*Second*, the proposed order will not prejudice Rowbottom. *See Dixon*, 355 F. Supp. 3d at 4. For starters, Rowbottom does not advance any allegations of prejudice. In his view, the Court should consider prejudice only after the movant has shown good cause. *See* Def.'s Opp'n at 5. That is incorrect as a legal matter. *See Dixon*, 355 F. Supp. 3d at 4 (stating courts consider prejudice "[i]n determining whether good cause exists"). And as a factual matter, the proposed order gives Rowbottom and his "legal defense team"—which includes "defense counsel" and "any attorneys, investigators, paralegals, support staff, and expert witnesses who are advising or assisting defense counsel," Protective Order at 2—access to the protected information to formulate his defense. *McCaughey*, 534 F. Supp. 3d at 140. If that allowance still proves too

4

burdensome, Rowbottom may object to a designation or seek modification of the order. *See id.*; Protective Order at 4–5.

Rejecting the proposed order would prejudice both the Government and Rowbottom. Recall that global discovery in this case consists of more than 8.14 million files. *See* Gov't Mot. ¶ 11. The video files alone "would take more than a year to view if played continuously." *Id.* Requiring the Government to review and redact every file before production would severely strain the Government's resources and slow Rowbottom's access to materials he needs to prepare his defense. That process would be flatly "inconsistent with rules requiring efficient and expeditious discovery." *Dixon*, 355 F. Supp. 3d at 8.

*Third*, "any public interest in the materials covered under the protective order will not be harmed by its issuance." *McCaughey*, 534 F. Supp. 3d at 142. The order excludes information that has, or will become, part of the public record. *See* Protective Order at 5. And the public has very little, if any, interest in the sensitive information covered by the proposed order. Rowbottom does not claim otherwise. In sum, issuing the order will simply guard sensitive information from publication "without due consideration of the relevant privacy interests beforehand." *McCaughey*, 534 F. Supp. 3d at 142.

One final point: Good cause backs the Government's request in this case, as it has in countless others. Neither the Government, nor the Court, are aware of any court rejecting the protective order proposed here—and there have been over 1,300 January 6 cases charged in this District. *See* Gov't Mot. ¶ 12 (collecting cases); *McCaughey*, 534 F. Supp. 3d at 142–43 (same).

**IV.**

For these reasons, it is hereby

**ORDERED** that the Government's [14] Motion for Protective Order is GRANTED.

**SO ORDERED**.


Dated: June 24, 2024                      TREVOR N. McFADDEN, U.S.D.J.